(30 Misc. Rep. 545.)

### REISS v. TOWN OF PELHAM.

### WEBER v. SAME.

(Supreme Court, Trial Term, Westchester County. February, 1900.)

1. NEW TRIAL—AFFIDAVITS OF JURORS—IMPEACHMENT OF VERDICT.
   Affidavits of jurors showing that in disregard of their duty to decide facts submitted, and nothing else, they considered a point of law, and found for defendant because they "believed" the defendant and another "were jointly liable," and that "both should have been sued," cannot be considered on a motion for new trial, to impeach their verdict.

2. SAME—NEWLY-DISCOVERED EVIDENCE.
   Where the defense of no. funds was interposed in an action against a town for damages for injuries caused by a defective highway, and defendant's highway commissioner testified that he had only one cent, newly-discovered evidence that it was not the course of business for the town to raise funds in advance for highways, but such funds were obtained from a bank during the year for which bills were audited, and put into the next tax levy, was sufficient to entitle the plaintiff to a new trial.

Actions by August Reiss and Charles Weber against the town of Pelham. Verdicts were rendered for defendant, and plaintiffs moved for a new trial. Motion granted.

George C. Appell, for the motion.
Henry G. K. Heath, opposed.

GAYNOR, J. Driving at night in the village of Pelham, the horse of the plaintiffs ran against the end of the side railing of a highway bridge and was killed, and they were hurt. The bridge extended from the village of Pelham across a stream to the township of Pelham. By statute both the village and the town were charged with the care of the bridge, the same as is the case with two towns similarly situated in respect of a bridge. The road on the

village side was formerly the same width as the bridge, as it is yet on the town side; but the village widened the road so that the end of the bridge stood against the middle of the road. In this way the horse of the plaintiffs going along the right-hand side of the road, ran against the end of the right-hand guard rail of the bridge in the darkness.

All the jurymen now make affidavits that the main reason why they found for the defendant was "that they believed that the town of Pelham and the village of Pelham were jointly liable for the obstruction complained of, and that both village and town should have been sued, and that the entire damage should not be borne by said town"; and "that said jury believed that under the law the plaintiffs could maintain an action against both said municipalities hereafter, or they would not have brought in a verdict for the defendant." This is a scandalous revelation. This jury make no scruple of swearing that in disregard of their duty to decide the facts submitted to them, and nothing else, leaving the law to the court, they entered into consideration of a point of law in the jury room, and decided the case in accordance with their decision of such point of law. Of course the plaintiffs had a right to sue either the town or the village, or both, just as they saw fit, and it was none of the jury's business which they did, nor of the court's, either. And yet there is what the jury swear they did. There is a way to call such jurymen to account. It is to be hoped that the commissioner of jurors will take care not to put them on the panel hereafter. No one's rights are safe in the hands of such men. Their conduct was outrageous. It is enough to dishearten a judge who wants to have justice done to have to hold court with such jurymen. Though it was no business of the jury or of the court that the plaintiffs sued only one instead of both, it may be incidentally mentioned that under a statutory requirement that such claims for damage be presented to village officials within a given time after the accident happens, the plaintiffs by failing to so present their claims had lost their right of action against the village. This serves to further illustrate the outrageous conduct of these jurymen, who would not have it that the court decides the law, and the jury only the facts, and insisted on taking everything into their own hands. Of what use would it be for trial judges to tell jurors that a trial is divided into two parts, viz., the decision of all points of law by the judge, and the decision of all questions of fact by the jury, neither having a right to usurp the office of the other, if jurors would nevertheless defy the law and act like the jurors in this case?

But the affidavits of these jurymen besmirching their conduct and thereby impeaching their verdict cannot be entertained. The law does not permit it. Dalrymple v. Williams, 63 N. Y. 361. Verdicts would otherwise have no stability. This is not the case of receiving the affidavits of jurymen in order to ascertain what the verdict really was which they agreed upon, where there was some mistake in the rendering of the verdict, or in the terms in which it was rendered.

The ground of newly-discovered evidence seems to be substantial. The defense of no funds was interposed. The highway commissioner testified that he had only one cent which he got from his predecessor. But it is now made to appear that the course of business was for the town meeting not to raise funds for highway expenses in advance, but for needed funds to be obtained from a bank which advanced it during the year, and then for the bills to be audited and put in the next tax levy. If the jury had had this evidence before them I do not think they would have found that the commissioner was without funds; that is if any guess can be given as to what such a jury would do.

The motion for a new trial is therefore granted on payment of all costs and disbursements after notice of trial.